The District Court erred in dismissing plaintiff's causes of action for violations of RICO by adding new elements and heightened pleading standards which have no basis in this Court's case law. And the District Court compounded that error by refusing to allow plaintiffs leave to amend their complaint to address these new requirements without providing any explanation whatsoever. The failure to allow amendment was an abuse of discretion under this Court's decisions in Eminence Capital and others. What would you have said had you been permitted to amend? You already amended once. So what would you have said in addition to what you said in the amended complaint? Certainly. We amended once after the defendants moved to dismiss, and that was under the standards that we had understood to be the case law of the Ninth Circuit. The District Court imposed different standards, and we would have had to amend to meet those standards, assuming those were the standards that she applied. Yes. I'm asking you, what would you have alleged in the complaint that you were not allowed to file? Well, specifically, she required, the District Court required a substructure, an explanation that there were different personnel who were responsible for conducting legitimate activities from those who were responsible for conducting illegitimate activities. I'm not sure different people, but a different structure. She wanted some decision-making structure that was part of the enterprise rather than simply of the two independent companies. That's correct. And we would have been able to amend, and we still would be able to amend, to allege with more specificity the particular structures that were involved, the nature of the joint agreement itself, the personnel who were involved from the different companies from Microsoft and Best Buy, the amount of, the consensual decision-making structure. And by identifying additional individuals involved at Best Buy and Microsoft, do you think that would have satisfied the District Court standard? I think that... You've argued that the standard is wrong, so if you allege that, do you think that's really going to satisfy the... I think that we could have satisfied that standard, yes, by alleging who those, the type of personnel that existed under the structures of that particular agreement, the nature of the, the nature of their, excuse me, of their activities, the fact that those personnel had particular authorities to address, to direct policies and procedures, they had authority over day-to-day operations of that particular, those particular sets of activities, the trial CD scheme, et cetera, that they operated on a regular basis, they met on a regular basis and not on some ad hoc basis. I think we could have met all of those particular requirements, and I think that pleading those separate personnel involvement would have met that standard, though, as you point out, we disagree with the appropriateness of the standard. You think Feldman is still good law? I do believe Feldman is still good law. I think it is. I think it should be. The point of... And the fact that we've ignored it doesn't mean it's bad law. It doesn't necessarily make it bad law. I think that there's obviously tension within the decisions of this Court in the last few years between Feldman, Blinder, Omnitrition on one hand, and Chang, and then on the other hand, Simon and Wah. I think that the point of RICO is to have an enterprise that has a structure separate from that which is necessary to commit the predicate acts. A corporation satisfies that. In the association and FACT context, a corporation satisfies that in the other types of enterprises, the individual corporation, the partnership, because it has the ability to conduct other kinds of business activities. I think perhaps in Simon and Wah, the Court was suggesting that there was something a little bit too broad and that those corporations didn't really have a participation aspect. They weren't really participating in the RICO conduct in any kind of meaningful related sense. For example, in Simon, you're talking about 1,600 potential defendants, and there's nothing in that complaint or in the opinion that suggests that there's any kind of interconnection or relationship at all between those defendants to commit those particular acts. It's just perhaps that they all decided to engage in that conduct. And in Wah, the issue was that there were essentially two corporations. There was Metris Direct that was part of the enterprise. They were engaging in a particular kind of wire fraud by charging consumers without authorization for a credit card protection program. And there was Citibank, who, if I recall correctly, was not sued and certainly wasn't in the case by the time of the appeal, that Citibank was running the card, the transactions through, and that was the wire scam itself. Metris Direct couldn't have actually accomplished the wire fraud without Citibank's participation, without having someone run the card through. Citibank really had no relationship to any of this at all. They simply accept credit cards on the basis of whoever comes forth, whatever vendors say, you know, we'd like to accept your card. So it's not so much that there was no corporation or that the corporation in and of itself shouldn't be a part of the enterprise, shouldn't establish a separate structure necessary for the enterprise, as much as it's the participation. And the courts write on this particularly in Chang, because in Chang, a corporation was alleged to be part of an enterprise and along with three individuals, and the court said, no, the corporation wasn't even sued, wasn't even a part of that enterprise really in any kind of meaningful sense, other than that it was so alleged. Here we're talking about a different circumstance. We're talking about two companies that were – that definitely have independent activity, but that also engage in this wire fraud together in the trial CD scheme. And that's sufficient under either the original cases, the Feldman Blender standards. It's also sufficient under the Simon & Wah standards, and we would meet that under either case. It's only under this aberration of the substructure requirement, which the district court found, which appears nowhere in this court's case law, only has precedent apparently in Ticketrak, which is the district court's prior summary judgment case. The Western District of Washington has its own law on this? I don't know if it's the entire Western District, but it seems to be this particular court. Judge Peckman was the judge in both cases. And to my knowledge, Ticketrak hasn't been followed by any – or cited by any other federal court in the country. I looked that up last week. Hopefully nothing's changed since then. Assuming you're right, and I'm puzzling over this one. I'm not sure. It's hard work. How do you get past the 9B fraud problem? That is to say, there's an alternative ground, and that is both counts that she dismissed were wire fraud counts, and you've got a higher standard of pleading as to the fraud. Sure. And I don't see much particularity with respect to the fraud that you've led. Well, let me raise two different points about that, because the defendants sort of raised two issues within the 9B context. One is Sienta. That's what they put their primary focus on. And their argument on Sienta we don't believe to be appropriate. Sienta can be pleaded generally. That's what Rule 9B says. That's what this Court's cases have said in Glenn Fedd. Simply, all we need to say is defendants engaged in – knowingly engaged in this wire fraud transaction. And that would be sufficient for Sienta. And what paragraph did you do then? I believe we said that in paragraph 18. It may not be quite – Yeah, you've alleged there that there was a deliberate failure with Microsoft's knowledge and approval. Are we to infer intent from that? I believe we are to infer intent from that, and that is – that's correct. Certainly we can, on an amended pleading, if the language was of concern to the Court, that we didn't say those words appropriately. In an amended pleading, we could add a more specific allegation in the charging allegations or within the context of the body of the complaint. We believe we did that sufficiently within that paragraph. And I'd note that under, I believe the case is Sun Savings and Loan, Sienta can be inferred by the nature of the scheme, regardless of whether or not it's pleaded. And we believe that the nature of the scheme exists such that Sienta can be inferred. And the second question that they've raised – and I think this goes a little bit more Your concern, Judge Fletcher, is that the issue of particularity of the remaining part rather than the Sienta. Microsoft doesn't address this particularly. Best Buy seems to address it a little bit more. But we've pleaded the scheme with specificity. We've pleaded the who of the scheme, that is, these two corporations engaged in the what. They deliberately cause persons to buy these trial CDs or take the trial CDs by swiping their credit cards or their debit cards without informing them whether or not – or of the fact that they would be – that they would have an account established and they would be charged for that account prior to – or following the expiration of the trial CD period. We've pleaded the when as to these particular individuals. We've also pleaded that this is an ongoing occurrence for the entire class over a period of several years. We've pleaded the how of the transaction, that is, what Best Buy did in omitting the material facts about the establishment of the accounts. If we were to find that there's not quite enough here and you were allowed to amend, is there anything more you could add with respect to the fraud? Well, the concerns that the defendants have raised on this, or the appellees have raised on this, seem to revolve around the fact that we haven't said which particular customer service representative, which particular – what particular statements that they've made. I believe we probably could allege that in more – with more detail and with more particularity. I don't believe that that's necessary, considering that our argument is that it is the corporation's decision to do so, and it's the corporation's action rather than this particular rogue cashier or that particular rogue customer service representative. Given that this is a RICO complaint and that we need an enterprise, is it enough if, for example, we were to find that you've pled with particularity with respect to Best Buy but not with respect to Microsoft? Let's say you've got two participants and you've given us some detail as to what happens in the Best Buy stores, but there's not a lot of detail in Microsoft. What happens then? Microsoft is a part of the scheme to do this. In that, Microsoft is the one who collects the money at the end of the day, and then who transfers the kickback back to Best Buy at the end of the day. It's an integral part. We may be able to plead in more detail as to how this came about and as to what conduct they took. They were very aware that this was happening for a considerable period of time and did not do anything to act remedially until after the litigation was already brought. And even then, their remedial actions, we believe, were too little and too late. We can describe that probably further with more particularity. The question of what happens, I think that it does have an adverse effect potentially upon the enterprise itself. But the enterprise would still exist in that it's still a combination between these two companies that creates the problem, that creates the fraud. I believe that to be the case. I believe if there are no additional questions at this time, I'll be glad to take a seat and save you from a problem.  Good morning. May it please the Court. My name is Mike Shepard. I'm here on behalf of Microsoft. With me at counsel table is Tim Block. I'm from Robbins, Kaplan, Miller, and Sirisi. He represents Best Buy. He's been kind enough to generously let me take the time for argument unless the Court has particular questions relating to Best Buy's arguments and positions. Thank you. About half a mile from here, the same plaintiffs who pressed this appeal, represented by the same lawyers, are pursuing a class action on behalf of a similar class, complaining about the same conduct in King County Superior Court. And this appeal presents the question of whether that state law consumer protection claim can come into federal court and satisfy what this court has called the heart of the RICO statute, namely the enterprise requirement. Because Congress enacted RICO to combat organized crime. It was the manipulation of organized structures. Unfortunately passed. I think there's certainly a number of people on the bench and off who think what you just said, that that's why RICO was passed. But it certainly is no longer limited to that. It's gone way beyond what most people thought its purpose was. And the Supreme Court, it seems to me, has made it clear that it's not limited to the type of racketeering and organized crime that was really at the heart of the statute. And it's not my contention that it's limited to organized crime. What is my contention is that it relates to organized structures. There has to be organization and structure. Whether it's organized crime in the sense of, you know, the mafia, that's a different question. But that's what the enterprise requirement is. And we're not suggesting that the court adopts a new requirement. All we're doing is saying the court should follow the requirements of the Supreme Court. When two corporations agree on a scheme and a plan for, let's say, some kind of unlawful arrangement, and it's implemented by the two who the first one makes charges or doesn't and the other one benefits, and there's constant communication, why isn't that the enterprise? Well, that might be a conspiracy. It might well be a State law tort. But if there isn't an organization that's alleged that has its own decision-making structure, then it's not racketeering. And we're not asking the court to make any sort of new requirement. As I say, we're applying the court's own precedent, and we're not doing what the Supreme Court criticized in Sedema. We're not asking the court to read in some requirement that isn't in the statute. What we're doing is looking at the enterprise term, which is in the statute, and looking at this Court's series of decisions starting with Chang of 10 years ago about what that means. Why doesn't it start with Feldman? I don't think so. Because you don't like Feldman. No, I actually think Feldman is fine. Okay. But we better start with Feldman. I think that Feldman is really addressed to the question of whether the enterprise was sufficiently distinct from the defendant himself. That was the real issue that was going on in Feldman. There were two individuals and seven corporations which were the enterprise. The question was whether the enterprise was sufficiently distinct from the defendant himself. The existence of corporations as part of the enterprise was cited as evidence of that. But the notion that a single corporation being a participant in an enterprise is sufficient to provide its structure I think has been rejected by this Court several times since Feldman. And I'm not sure Feldman even stands for that proposition. But in any event, this Court has said several times that that's not enough. And if you think of what the RICO statute is about, it's really focused on an organized group of people with its own structure. And the notion that just because part of the association, in fact, is separately a corporation, that doesn't give the organization its own structure. And that's why I think the courts have made clear since Feldman that just the presence of a corporation isn't enough to satisfy the organizational, the enterprise requirement that is at the heart of the statute. In your view, what would be enough to form an enterprise between two corporations? Well, if there were allegations of a separate decision-making structure. And what do you mean by a separate decision-making structure is my question. You know, I don't know exactly. There's unlimited imagination of what two corporations might do. Imagine one or two, because I want to know what you're talking about. Well, let's say the two of them actually set up a separate entity. Here's the group of people who are going to decide all issues relating to joint marketing, including what the Best Buy employees actually say to customers who come walking in the store about whether they're going to be signed up for MSN, which, by the way, is not part of any of the allegations in this complaint. Any well-advised corporation, they'd be damn fools to do that. Well, let's say, yes. Let's say they set up a structure like that. And not only that, the structure had control over what happened to the proceeds. I think if there were allegations of that kind, separate decision-making structure, actually controlling the transactions in this case, and the structure also controlled the proceeds, those are the standards that this Court established in Chang 10 years ago. That's a pretty easy case. Now, how far towards the line can you get with that? Do you have to have a separate entity? We're not near that line. We don't have a separate entity. First of all, we're working here with the allegations. I'm sorry. Sorry, Your Honor. Judge Fletcher asked you to imagine a couple of things, and you imagined one that would be a very, very powerful and, I think, indisputable case. Now, we're being asked here to see how far can we push that. You gave us one that was real easy. Now, give us one that's harder and tell us why this one doesn't do it. Why do these two corporations, why is it minimally required under RICO to establish a third organization when we have two existing corporations that the plaintiffs have alleged are dealing with each other in this way? Because that's ultimately what Congress was so afraid of and why it set up a separate treble damage, attorney's fees remedy, to separate that from all the regular torts that can get prosecuted in state court all the time. It's that separate organizational decision-making structure that motivates the difference. And those aren't my words. That's this Court in Chang, where it's each of these three standards that I've articulated, ascertainable structure guiding the actual performance by the defendants of their role in the transaction and a separate structure for the predicate acts, those are right out of Chang, they weren't alleged in the complaint in Chang, and therefore the Court will dismiss. An enterprise under the statute that was engaged in a pattern of racketeering or some of the other predicate acts might clearly be classified as organized crime and would undoubtedly come within the statute. The fact that that enterprise was also engaged in lawful activities would not take it outside of the statute. I agree with that. Now, we'll begin from the easy premise that Best Buy and Microsoft, bless them, are both legitimate enterprises doing very, very successful in their business. Now, if they were engaged in something to which they had agreed that was, let's say, less savory and not lawful, would that insulate them from RICO by virtue of the fact that they did have a legitimate business purpose when they were established? If all they did was agree, they would be insulated from RICO because, as Chang makes clear, an agreement and acts in support of the agreement. And, by the way, that is all that's alleged in this complaint. You look at the active allegation in this complaint, I think it's 34, agreement and acts. That's the only thing that's alleged as the enterprise in this case. So if all that you allege is an agreement, that's not a RICO. You need a ---- If they were using their existing structures and running drugs here and doing some money laundering, could they be brought under RICO? Well, I would imagine that if they were actually doing some money laundering and drug transactions, they would need to have something else that was running those things. Well, that would be convenient for your theory if they had a separate entity. But I'm giving a hypothesis in which they don't have a separate entity. If they don't have a separate entity. If two corporations running legitimate operations that have simply agreed to do some money laundering between the two of them. Then charge them with money laundering, charge them with drug running, charge them with fraud. But it's not a RICO. A RICO is an organization. Loan-sharking, knee-capping, none of it's RICO so long as we have the two corporations staying on their own side of the fence and they don't set up a separate decision-making organization that coordinates the two. Without an enterprise, there is no RICO. I understand that. I understand that part. But that's the conclusion. I'm after something else. That is to say, well, what happens if we have one guy in one of the two corporations who actually kind of calls the shots? Nobody ever specifies him as, okay, we're setting up a formal organization. But the truth is, what Joe does is, you know, he calls the shots for the loan-sharking and the knee-capping. But the organization chart doesn't tell you that. It just happens that everybody knows that Joe does what Joe does. Right. You don't have to have an organizational chart. What you actually have to have is an organization with a decision-making structure. And what the Court is hypothesizing begins to start addressing how the organization How, then, is that different from somebody in either Microsoft or in Best Buy saying, okay, this is how this deal is going to be set up, and then that's how it works? Why do you need more than the fact that everybody understands that there's somebody in one corporation or the other that runs the show? Well, first of all, there isn't even an allegation here that there's somebody in one corporation or the other who runs the show. We don't know that. And, in fact, Because there's no show? I mean, what do you mean? There's no allegation. There's no allegation of that. And, in particular, with the Well, there's an allegation that something's happening. Maybe they don't name Joe because maybe they don't know who Joe is. Do they need to name Joe? No. They need to describe a decision-making structure. What happens if the parties don't agree? How does it work? What makes this a coherent Well, maybe there comes a point at which I understand fraud's different. Let's say we've got 9B for that. But if we're only talking 8A, there comes a point at which some of this is going to be discovered after the complaints file. All they've got to do is allege it. And maybe they don't know who Joe is yet. They just know that somebody's running this deal. They haven't even alleged that, that somebody's running the deal, as opposed to the specific person. All they've alleged is an agreement and acts, and that is what Chang has said clearly, not enough. Agreement and acts, not enough. And, yes, there could be more discovery. They could find out a whole lot more. But the question is when they decide to come bring their case into federal court, have they alleged what this court has told them to allege, starting in Chang 10 years ago? And the answer on this complaint is clearly not. And not only do they not allege a structure, they don't allege any structure for the distribution of proceeds. They say they do, but in fact what they allege is an agreement. They say Microsoft gets or Best Buy gets a flat fee and a percentage of each monthly subscription. That's an agreement. It doesn't need any ongoing structure. It doesn't present any of the issues of a separate organization controlling some revenues that Congress was concerned about. It just isn't close to what this Court set up in Chang as what is sufficient to constitute an enterprise. And, you know, they have some cases that read well, like the Dooley case that they cite in their reply brief on that subject. But they omit, for example, in the Dooley case, and that was a summary judgment case, so there had been discovery. But they were trying to cite that case as the association. It was just a group of people who were cooperating to determine a price, and that's enough for RICO. Well, in that case, it turned out that what happened was they set the price by majority vote, and all members abided by that decision. And that is a structure. There is an organization. That's what they haven't alleged in this case, even though Chang made clear that that is what a RICO enterprise needs to have in order to survive in this circuit. Now, to consider the sufficiency of the fraud allegations, Microsoft not alleged to have said anything, hidden anything, or done anything to sign up a single-person project. What do you do with Paragraph 18 in the First Amendment complaint? That's the one with the reference to the three alternatives, one of which is knowledge. What I say to that is- You have a deliberate failure on the part of Best Buy and Microsoft to make disclosures and make representations which have been formulated and implemented by Best Buy jointly with Microsoft, with Microsoft's knowledge and approval. And why isn't that a sufficient allegation under 9b? Well, for two reasons. One is the plaintiffs themselves concede that you have to infer intent from a scheme reasonably calculated to deceive. And that doesn't work against Microsoft because all they say Microsoft did is the billing. Well, it was done with Microsoft's knowledge and approval. Well, they do allege that. The question is whether there are facts that are sufficient to infer intent. They allege knowledge. The question is whether there are facts sufficient to infer it or whether that's just a gross conclusion that isn't sufficient even under the plaintiff's own standard. But I submit that the actual standard is the 9b standard of did they actually make specific allegations of Microsoft's role in the deception. And the answer to that is clearly they did not. All they say is Microsoft did the billing. They say in various places, like paragraph 11, where they illustrate the way it worked, the procedure used. And they say that was by agreement with Microsoft. That was the method that was used. Right. And the question is whether that would satisfy the particularity standard of 9b when ultimately, as it relates, Your Honor, generalities in the complaint but to the specific misrepresentations that they allege. And if you look at the allegations that include Microsoft's role in the decision, they don't relate to the specific misrepresentations. The paragraph that relates to specific misrepresentations is the one that Your Honor cited. That's the one that's in the alternative, that either they jointly formulated it, jointly implemented it, or they had knowledge and approved. And what's behind the knowledge and approval, as counsel said both below and here, is that people came to Microsoft afterwards, the allegation is, contacting Microsoft is how it's alleged in the complaint, paragraph 17, I believe. But a complaint, first of all, a contact isn't a complaint. A complaint isn't an allegation of fraud. Fraud could be mistake, dissatisfaction, and even if the complaints were allegations of fraud, that doesn't mean they're valid or that Microsoft determined them to be valid. And that's the only real allegation here of what Microsoft supposedly knew or did as it relates to knowledge of this actual deception. Under the plaintiff standard, as long as there's some scheme that seems reasonably calculated to defraud, they could name pretty much anybody, regardless of whether those people actually had some participation or knowledge of it. But, of course, Microsoft, according to the allegations, is not only a participant but a beneficiary. I mean, it's Microsoft that does the billing that keeps the money. I mean, that's the allegation. But they're not just some idiot sending Joe Blow down at Ivor's Acres of Clams. I mean, they're making money out of this, right? Correct, Your Honor. But that doesn't make the specificity of participation in the deception. Some people get money and they just don't know that it's wrong if it, in fact, turns out to be wrong. I would like to spend a couple of minutes, I see my time is running short, on this question of leave to amend, because I think that the district court hasn't been treated fairly in the plaintiff's briefs. As you noted, Your Honor, this was an amended complaint. And it was not the first. Had you answered and then they amended before this? No. So they amended without your even having answered? This case started in San Francisco. Let me answer my question first and then tell me the narrative. Did you answer the complaint? No. So their amendment was in the absence of an answer. Okay, I'm sorry. Go ahead. The case was filed in San Francisco. We both moved that the form was inconvenient and also moved to dismiss. The judge granted the forum issue, the forum motion, moved it up here. But we had briefed exactly the same argument we're making here. I think it's ER 45. Exactly the same argument we made here. And they amended their complaint, and all the allegations that they're talking about now, as justification for the sufficiency of their complaint, are from the amendments that they made in response to our motion below. Because we said when the case moved up here, they said, will you give us leave to amend? And we said, fine, go ahead, amend. So this is an amended complaint in response to our specific motion on these very issues. Then the case gets in front of Judge Peckman, and she says, I'm giving you each 30 minutes to argue. And she allowed us all to go over. And in the course of that argument, she said to plaintiff's counsel, what structure besides the contract itself can you point to? This is ER 88 is the transcript, and it's at page 25. What structure besides the contract itself can you point to? Counsel gave a couple of excuses and then said, we cannot allege that at this point. So this ‑‑ I'm on page 25. Help me out. Okay. What structure, I'm on line 413. I'm not privy to the, for example, internal organization charts of Microsoft. At this point, we don't know the personnel who are tasked at each company with pursuing activity pursuant to the contract. That's what they say. Right. So we cannot allege that at this point. That's what he says. Right. But we can't allege that referring to what he just talked about. The court has given him the opportunity. The court unquestionably says, this is what I'm concerned about. What structure besides the contract itself can you point to? And he says, essentially, here's why I can't point to anything else, but I got nothing. I have nothing else to respond. The court then says to him at the end, what else would you like to argue to me? There's no further argument on this. It's only after the district court begins to say, okay, I'm thinking of dismissing the case. You know, this has been a fight for a long time, and we've seen this in various other circuits. They've got standing orders requiring particularity of pleading structure and so on. But this is Rule 8a. Why do they need to have that degree of particularity for an 8a matter? Because, of course, we've held that 8a is the applicable standard. This is the essence of what makes a racketeering claim. Well, I understand that, but why is it not enough for him to say at this point, not with respect to fraud, but with respect to structure, to say there is an independent structure that satisfies that element of the enterprise claim? First of all, the complaint doesn't even say that. The complaint says it's an agreement. But that's easy to say. That's very easy to amend to say. Right. But the answer to the Court's question is, in this Court's decision in Chang and in the number of decisions that have followed Chang, Chang had the precise problem, gave this list of things that are supposed to be in the complaint, and because they weren't in the complaint, the Court dismissed. And so all we're asking is that the Court keep that jurisprudence, and under that jurisprudence this complaint doesn't come close. Okay.  Thank you. If it's 30 seconds or less. All right. Timothy Block on behalf of Best Buy. There was a question about the sufficiency of the allegations against Best Buy and whether or not those were good enough and Microsoft was not. And I submit to the Court that those allegations are made in the abstract, that Odom himself has not made the allegations of what he did and what he experienced at the Court. And I submit that given the fact that we've gone through the process of taking his deposition, that that is done because if Mr. Odom was required to say what happened to him at the store and what happened to him at that process, that plaintiff could not meet the pleading standards. I think that those standards require Mr. Odom as Mr. Maloney or Ms. Maloney to say what happened to them. And that is one of the reasons why the Court ruled that the particularity of the allegations against Best Buy was not there because they were made in the abstract, not in particular as to what these plaintiffs did. I'm sorry. You said something quickly about a deposition. Has there been a deposition taken? Yes, Your Honor. Of Odom? Yes, Your Honor. And of Ms. Maloney? Yes, Your Honor. Thank you, Judge. Thank you. I may respond briefly. There were a number of issues that were raised as to whether or not there was an organization and a structure involved here. I believe that we have alleged that sufficiently with the notion of the joint marketing agreement and the activities that they conducted. We alleged a decision-making process that was a joint decision-making process. Again, maybe we didn't use the word consensus, but we did use joint, the word jointly made, and that was appropriate. But even in the event that we needed to, we could certainly make those allegations a little more clear. As I described earlier, we could discuss the types of personnel that were involved, the types of meetings and the nature and times in which they occurred, or regularity in which they occurred. We could discuss the fact that they had a consensus decision-making process, that decision-making had to be made unanimously, and that they could enact policies and that it was a particular group. So we could specifically allege the structure that they're so concerned about in the event that we didn't allege it appropriately in a previous time. The counsel ---- Can I interrupt and ask a question about depositions? This is ---- I probably should have known this, but I did not. Even though this is basically at the 12B6 stage, we've had some depositions. How is that happening? This action did not have depositions. What happened in this case procedurally, this case was brought, as counsel said, to the Western District of Washington after a motion to transfer. The amendment, by the way, included an additional plaintiff and an additional Federal claim, the EFTA claim, which were not previously included, so it wasn't simply to respond to their issue. That claim is now gone, right? That claim has now been dismissed. And the court, after essentially determining that the RICO allegations were insufficient, suggested to the parties, maybe you want to bring this. The EFTA claim would probably survive, but that seems to be the tail wagging the dog. Maybe you want to bring the state causes of action down in state court in Washington. We agreed to do that collectively. We voluntarily dismissed the cause of action with the court's approval, and we raised it then in state court in Washington. It's been that action that has had discovery, that has proceeded, has had depositions take place. Have you had depositions in that action of the defendants? Yes, we have. To allow you to discover some of the things at this point you say in this question by Mr. Lee that you say you don't know. Yes, we have had depositions and we've had other document discovery that certainly has shed light on those matters. I believe that we were continuing to conduct an investigation parallel to or alongside, and I can't turn back the clock and say, well, what we could have pleaded then based upon our specific knowledge at that moment versus what we could potentially plead now if the case were remanded to allow us to amend the complaint. Yes, we do have additional information, though, from that discovery. And that additional information also includes the fact that Microsoft was well aware that accounts were being activated without the authorization or consent of the consumers. Now, it could have done something about that. It could have sent out notice to all of those consumers who it activated an account for and said, you appear to have had your card swiped at Best Buy.    Please make sure that you have your card swiped at Best Buy. Please let us know if you don't authorize that. If you were to be allowed to amend in the district court, is there anything that would prevent you then from putting in what you've learned in these depositions in the state court suit? Arguably, there's the protective order that if there is material or information that is protected from disclosure by that protective order that we don't have from  There is entered a protective order in the state court suit? There is a protective order, I understand, in place. So it would have an effect. I don't think it would have an effect of precluding us from being able to amend entirely or being able to allege a number of these issues with specificity. But certainly I couldn't submit a document or attach a document to this pleading, to an amended pleading that was subject to a protective order in the state court. Also, this case has the court has the state court has concurrent jurisdiction over a RICO cause of action. It's possible, and this would be a strategic decision to be made down the road, but if the district court's decision were overturned, we were allowed, because the standards were incorrectly applied or we were allowed leave to amend, it's possible that we could decide to withdraw the action there and plead the RICO claims in the state court. I don't know whether or not that would be something we would choose to do, but it's something that is out there and that might get around some of those issues. Has there been an answer yet in this lawsuit? Yes, there has been an answer, and there is. So, in other words, if you're going to withdraw, you need permission? If we're going to withdraw in the state court. If you want a voluntary dismissal, not on the merits, you need permission, if there's already been an answer. Isn't that right? But that would be in the state court. No, I'm asking. Maybe I misunderstand your question. Has there been an answer filed in this suit yet? In the federal court? No, there has not. The motion to dismiss was decided. There was no answer. No, that was my question. That wasn't precise. I'm sorry. Briefly, on a couple of other points, the issue about whether there's an enterprise sufficiently distinct and the characterization of Feldman that counsel had, counsel unfortunately does not recognize omnitrition in which this court says the corporation and racketeering scheme is sufficient in and of itself to give the enterprise a separate structure. I'm sorry, a structure separate from the racketeering activity. Corporate entities have a legal existence separate and apart from their participation in the racketeering, and the very existence of a corporation meets the requirement for a separate structure. That case was in place. Chang ultimately, I believe, cites to that case, and that case only relates to a single corporation that was involved in the Ponzi scheme. So we believe that that would still be good law. Counsel also raised the concern about 9B, but seems to ignore and particularly goes back to the issue of Center, but continues to ignore the issue of Glenn Fedd, which says all we need to do is allege that Center exists. All we need to do is say that they acted with knowledge. Your time is up. Can you give me 30 seconds to conclude, if you like. Just in sum, even if the court chooses to accept all of the pleading standards that were required by the district court, which we don't believe to be appropriate, we would request that the court allow us leave to amend as the court views its discretion in not allowing us to do so. Thank you very much. I appreciate your time. Thank you all very much. The case is submitted.
judges: Reinhardt, W. Fletcher, Bybee